ALBRIGHT, STODDARD, WARNICK & ALBRIGHT,
G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 001394
MARTIN A. MUCKLEROY, ESQ.
Nevada Bar No. 009634
801 South Rancho Drive
Las Vega, NV  89106-3854
Telephone:  702/384-7111
702/384-0605 (fax)

COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
PAUL J. GELLER
JONATHAN M. STEIN
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| S. BLAKE MURCHISON, | ) | Case No. _____ _____ |
| | ) | |
| Plaintiff, | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| vs. | ) | |
| | ) | **JURY DEMAND** |
| STATION CASINOS, INC., FERTITTA | ) | |
| COLONY PARTNERS, LLC, FERTITTA | ) | |
| PARTNERS, LLC, COLONY CAPITAL, | ) | |
| LLC, FRANK J. FERTITTA, III, LORENZO | ) | |
| J. FERTITTA,  THOMAS J. BARRACK, JR., | ) | |
| JONATHAN H. GRUNZWEIG, JAMES E. | ) | |
| NAVE, D.V.M, THOMAS M. FRIEL, SCOTT | ) | |
| M. NIELSON, and KEVIN L. KELLEY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff S. Blake Murchison ("Plaintiff") files this Class Action Complaint against Defendants Station Casinos, Inc. ("Station Casinos"), Fertitta Colony Partners, LLC ("Fertitta Colony"), Fertitta Partners, LLC ("Fertitta Partners"), Colony Capital, LLC ("Colony Capital"), Frank J. Fertitta, III (" Frank Fertitta"), Lorenzo J. Fertitta ("Lorenzo Fertitta"), Thomas J. Barrack, Jr., ("Barrack"), Jonathan H. Grunzweig ("Grunzweig"), James E. Nave, D.V.M. ("Nave"), Thomas M. Friel ("Friel"), Scott M. Nielson ("Nielson"), and Kevin L. Kelley ("Kelley"), and alleges as follows:

## INTRODUCTION AND NATURE OF THE ACTION

> *A Gentleman is a man who will pay his gambling debts even when he knows he has been cheated.*

Count Leo Tolstoy (1828-1910)

1.      The herein-named defendants are not acting Gentlemanly.

2.      In the face of Station Casinos' near-certain bankruptcy, debt default and other events of insolvency, the defendants are trying avoid honoring the debt obligations they owe to a large portion of their corporate bond holders, including the Plaintiff.

3.      The scheme the herein-named defendants have created is a bond exchange offer, which gives a limited number of Station Casinos' bond holders the opportunity to obtain new bonds which will subordinate the existing bonds during an event of bankruptcy. Station Casinos' bond holders to whom the herein-named defendants have unilaterally chosen ***not to offer bond exchanges*** are left holding the short end of the stick and face the imminent threat that their investments in – and contracts with – Station Casinos will not be honored during a liquidation process.

4.      There is no lawful justification for the herein-named defendants to have cherry-picked among Station Casinos' investors by offering the bond exchanges to only select individuals and

entities to the exclusion of all others.  The exchange offers unfairly, disloyally and without

bondholders' consent, deny Plaintiff and the entire class of similarly situated bondholders, the ability

to take advantage of the bond tender offers.  Plaintiff's bond holdings will be subordinated to the

newly-issued bonds and, as a result, will likely be rendered worthless as the specter of Station

Casinos' insolvency approaches.

5.      Thus, Plaintiff brings this class action in order to protect his bond investment, and the

investments of similarly-situated bond holders, pursuant to the Trust Indenture Act of 1939,

15 U.S.C. §§77aaa, *et seq.*, the plain language of the Indentures governing the bonds issued by

Station Casinos, the "All Shares/Best Price" rule, 15 U.S.C. §78n(d)(7), and common law claims;

and seeks declaratory and injunctive relief to prevent consummation of the exchange offers and the

wrongful impairment of the rightful priority status of Plaintiff's bond holdings.

### PARTIES

6.      Plaintiff Murchison, at all material times, has owned two bonds issued by Station

Casinos, one that is styled as "6 ⅞ % Senior Notes Due 2016," with the unique Committee on

Uniform Security Identification Procedures ("CUSIP") Number 857689ATO, and the other that is

styled as "7 ¾ % Senior Notes Due 2016," with the CUSIP Number 857689A0B.

7.      Defendant Station Casinos is a corporation incorporated under the laws of the State of

Delaware, and has its principal place of business in Las Vegas, Nevada.

8.      Defendant Frank Fertitta has been a member of the board of directors of Station

Casinos at all materials times, and maintains ownership and controlling interest in Defendants

Fertitta Colony, Fertitta Partners, and Station Casinos.

9.     Defendant Lorenzo Fertitta has been a member of the Station Casinos' board of directors at all material times, and maintains ownership and controlling interest in Defendants Fertitta Colony, Fertitta Partners, and Station Casinos.

10.    Defendant Barrack has been a member of the Station Casinos board of directors at all material times, and maintains ownership and controlling interests in Defendants Colony Capital and Station Casinos.

11.    Defendant Fertitta Colony is the parent company of Station Casinos. Fertitta Colony is a limited liability company organized under the laws of the State of Nevada, has its principal place of business in Las Vegas, Nevada.  Fertitta Colony is a partnership between Defendants Frank Fertitta, Lorenzo Fertitta, Colony Capital and Barrack.

12.    Defendant Colony Capital is a limited liability company organized under the laws of the State of Delaware with its principal place of business of Los Angeles, California.  Colony Capital maintains ownership and controlling interests in Station Casinos.

13.    Defendant Grunzweig has been a member of the Station Casinos board of directors at all material times.

14.    Defendant Nave has been a member of the Station Casinos board of directors at all material times.

15.    Defendant Friel has been Executive Vice President, Chief Accounting Officer and Treasurer for Station Casinos at all material times.

16.    Defendant Nielson has been Executive Vice President and Chief Development Officer for Station Casinos at all material times.

17.    Defendant Kelley has been Executive Vice President and Chief Operating Officer for Station Casinos at all material times.

- 4 -

18.     All of the Defendants are collectively referred to herein as "Defendants." Distinctly, Defendants Frank Fertitta, Lorenzo Fertitta, Barrack, Grunzweig, Nave, Friel, Nielson, and Kelley are collectively referred to herein as the "Board and Officer Defendants."

19.     Herein, the term "bonds" is interchanged with and given the same meaning as the term "notes."

## JURISDICTION AND VENUE

20.     Jurisdiction is proper under 15 U.S.C. §§77v(a), vvv(b) in this District for Plaintiff's Trust Indenture Act of 1939 claims.

21.     Jurisdiction is proper under 28 U.S.C. §1331 in this District for Plaintiff's "All Shares/Best Price" claims pursuant to 15 U.S.C. §78n(d)(7).

22.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because this matter is a class action with an amount in controversy that exceeds $5,000,000, there are hundreds if not thousands of Class members, and members of the Class of Plaintiffs are citizens of states different from Defendants.

23.     Jurisdiction is proper under 28 U.S.C. §1367 in this District for Plaintiff's supplemental state law claims.

24.     Venue is proper under 28 U.S.C. §1391 in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants are subject to personal jurisdiction in this District.

25.     The Private Securities Litigation Reform Act of 1995 does not apply to this case as none of the claims asserted herein sound in fraud. *See, e.g., In re Luxottica Group S.p.A., Sec. Litig.*, 293 F. Supp. 2d 224, 231 (E.D.N.Y. 2003).

## SUBSTANTIVE ALLEGATIONS

### A.    The Bonds

26.    At all material times Plaintiff has owned two bonds issued by Station Casinos, one of which is styled as "6 ⅞ % Senior Notes Due 2016," and the other of which is styled as "7 ¾ % Senior Notes Due 2016."

27.    Each bond is guaranteed by Station Casinos.

### 1.    6 ⅞% Senior Notes Due 2016

28.    The Indenture for the 6 ⅞% Senior Notes Due 2016 provides that the entire outstanding principal of the Notes will mature on March 1, 2016. *See generally* Indenture for 6 ⅞ % Senior Notes Due 2016, attached hereto as **Exhibit A**. The Indenture further provides that Station Casinos "will pay interest semi annually on March 1 and September of each year, commencing September 1, 2004." *Id.*

29.    Article IV, section 4.13 of the 6 ⅞ % Senior Notes Due 2016 Indenture provides that Station Casinos "shall not incur any Indebtedness that is subordinate or junior in right of payment to Senior Indebtedness and senior in any respect in right of payment to the Notes."

30.    Article VI, section 6.01 of the 6 ⅞ % Senior Notes Due 2016 Indenture provides for "Events of Default," which are triggered, among other reasons, when and within the meaning of "Bankruptcy Law," Station Casinos "commences a voluntary case," "makes a general assignment for the benefit of its creditors," or "admits in writing its inability generally to pay its debts as the same become due." Article VI, section 6.07 of the 6 ⅞ % Senior Notes Due 2016 Indenture provides for "Rights of Holders to Receive Payment" and guarantees

> [T]he right of any Holder of a Note to receive payment of principal of, Liquidated Damages, if any, and interest on the Note, on or after the respective due dates expressed in the Note, or to bring suit for the enforcement of any such payment on or

- 6 -

after such respective dates, shall not be impaired or affected without the consent of the Holder.

31.     Article IX, section 9.02 of the 6 ⅞ % Senior Notes Due 2016 Indenture provides that, without consent of the affected note holder, Station Casinos may not, among other things, "reduce the rate of or change the time for payment of interest or Liquidated Damages, if any, on any Note," alter "the principal of or change the fixed maturity of any Note or alter the redemption provisions with respect thereto," waive past defaults or the rights of the note holder to receive payment under Article VI, section 6.07, or "waive a default in the payment of the principal of, or Liquidated Damages, if any, or interest on, any Note."

32.     Article XI, section 11.01 of the 6 ⅞ % Senior Notes Due 2016 Indenture provides that the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa, *et seq.*, governs and controls the Indenture, including with respect to provisions that would be in conflict with that law.

33.     Article XI, section 11.11 of the 6 ⅞ % Senior Notes Due 2016 Indenture provides that New York State law applies to any lawsuit arising out of the Indenture.

### 2.     7 ¾% Senior Notes Due 2016

34.     The Indenture for the 7 ¾% Senior Notes Due 2016 provides that the entire outstanding principal of the Notes will mature on August 15, 2016. *See generally* Indenture for 7 ¾ % Senior Notes Due 2016, attached hereto as **Exhibit B**. The Indenture further provides that Station Casinos "will pay interest semi-annually on February 15 and August 15 of each year, commencing February 15, 2007." *Id.*

35.     Article IV, section 4.13 of the 7 ¾ % Senior Notes Due 2016 Indenture provides for "Limitations on Liens," which prohibits Station Casinos from assuming or guaranteeing "any Indebtedness secured by a Lien upon any of its property without equally and ratably securing the [7 ¾ % Senior Notes Due 2016] with (or prior to) the Indebtedness secured by the Lien, for so long

as the Indebtedness shall be so secured or (y) in the event that such Indebtedness is Subordinated Indebtedness, securing the [7 ¾ % Senior Notes Due 2016] prior to such Subordinated Indebtedness as to such property, for so long as such Subordinated Indebtedness shall be so secured."

36.     Article VI, section 6.01 of the 7 ¾ % Senior Notes Due 2016 Indenture provides for "Events of Default," which are triggered, among other reasons, when and within the meaning of "Bankruptcy Law," Station Casinos "commences a voluntary case," "makes a general assignment for the benefit of its creditors," or "admits in writing its inability generally to pay its debts as the same become due." Article VI, section 6.07 of the 7 ¾ % Senior Notes Due 2016 Indenture provides for "Rights of Holders to Receive Payment" and  guarantees:

> [T]he right of any Holder of a Note to receive payment of principal, premium, if any, and interest on the Note, on or after the respective due dates expressed in the Note, or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of the Holder.

37.     Article IX, section 9.02 of the 7 ¾ % Senior Notes Due 2016 Indenture provides that, without consent of the affected note holder, Station Casinos may not, among other things, "reduce the rate of or change the time for payment of interest on any Note," "reduce the principal of or change the fixed maturity of any Note or alter the redemption provisions with respect thereto," waive past defaults or the rights of the note holder to receive payment under Article VI, section 6.07, or "waive a default in the payment of the principal of, or interest on, any Note."

38.     Article X, section 10.01 of the  7 ¾ % Senior Notes Due 2016 Indenture provides that the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa, *et seq*., governs and controls the Indenture, including with respect to provisions that would be in conflict with that law.

39.     Article X, section 10.11 of the 7 ¾ % Senior Notes Due 2016  Indenture provides that New York State law applies to any lawsuit arising out of the Indenture.

- 8 -

**B.    The Exchange Offers**

40.    Station Casinos is struggling with its debt load as the consumer spending crash has affected the casino and gaming market.

41.    On or about February 3, 2009, Station Casinos a private offering memorandum with respect to bond exchange tender offers ("Exchange Offers").

42.    The stated purpose of the restructuring plan "is to significantly reduce the outstanding principal amount of indebtedness and cash interest at the expense of Station Casinos."

43.    In connection with the Exchange Offers, Station Casinos admitted in writing that "it elected not to make a scheduled $14.6 million interest payment" to its investors and anticipates "commencing a voluntary case under chapter 11 of the U.S. Bankruptcy Code."

44.    The Exchange Offers are, however, limited to "Qualified Institutional Buyers" ("QIBs") and "certain non-U.S. investors located outside the United States."   These QIBs and certain non-U.S. investors located outside the United States will receive New Notes in exchange for the following notes ("Old Notes") they own:

| Title of Old Notes | CUSIP/ISIN |
|---|---|
| 6% Senior Notes due 2012 | 857689AV5 / US857689AV53 |
| 7¾% Senior Notes due 2016 | 857689BA0 / US857689BA08 |
| 6½% Senior Subordinated Notes due 2014 | 857689AR4 / US857689AR42 |
| 6⅞% Senior Subordinated Notes due 2016 | 857689AT0 / US857689AT08 |
| 6⅝% Senior Subordinated Notes due 2018 | 857689AZ6 / US857689AZ67 |

45.    The controlling terms of the Exchange Offers are set forth solely in the private offering memorandum and not filed with the Securities and Exchange Commission.

46.    Defendants unilaterally and arbitrarily determine who and which entities are eligible as QIBs and certain non-US investors located outside the United States.  Defendants have not, and will not, deem Plaintiff and other class members to be eligible for the Exchange Offers either as

QIBs or as certain non-U.S. investors located outside the United States.  Plaintiff and the other class

members do not, and will not at any time, consent to by vote or otherwise the Exchange Offers.

47.     The New Notes will subordinate the Old Notes to the extent that, in the event of

Station Casinos' bankruptcy, the New Notes would have priority over the Old Notes.

48.     Beneficiaries of the Exchange Offers will also receive cash as follows:

(a)     the holders of 6 % Senior Notes due 2012 and 7 ¾% Senior Notes due 2016

will receive $400 in aggregate principal amount of 10% Second Lien Notes due 2014 issued by the

Company and $100 in cash for each $1,000 in principal amount of those notes; and

(b)     the holders of 6 ½% Senior Subordinated Notes due 2014, 6 ⅞ % Senior

Subordinated Notes due 2016, and 6 ⅝ % Senior Subordinated Notes due 2018 will receive $70 in

aggregate principal amount of 10% Third Lien Notes due 2014 issued by the Company and $30 in

cash for each $1,000 in principal amount of those notes.

49.     The total value of Old Notes affected by the Exchange Offers is approximately as

follows:

| | | | Per $1,000 in principal amount of Old Notes | |
| Title of Old Notes | CUSIP/ISIN | Principal Amount Outstanding as of December 31, 2008 | Principal amount of New Notes issued for Old Notes in the Plan | Cash Consideration for Old Notes |
| --- | --- | --- | --- | --- |
| 6% Senior Notes due 2012 | 857689AV5 / US857689AV53 | $   450,000,000 | $   400 | $   100 |
| 7¾% Senior Notes due 2016 | 857689BA0 / US857689BA08 | $   400,000,000 | $   400 | $   100 |
| 6½% Senior Subordinated Notes due 2014 | 857689AR4 / US857689AR42 | $   450,000,000 | $   70 | $   30 |
| 6 ⅞% Senior Subordinated Notes due 2016 | 857689AT0 / US857689AT08 | $   700,000,000 | $   70 | $   30 |
| 6 ⅝% Senior Subordinated Notes due 2018 | 857689AZ6 / US857689AZ67 | $   300,000,000 | $   70 | $   30 |

50.     On or about March 2, 2009, Defendants will finalize the Exchange Offers.

51.     Prior to the Exchange Offers, each of the individual Old Notes would maintain the

identical bankruptcy priority, and the attendant bond holders of those individual Old Notes,

including Plaintiffs and the Class, would maintain identical rights with respect to each of the individual Old Notes. The Exchange Offers give QIBs and certain non-U.S. investors located outside the United States priority ahead of previously equal bond holders, including Plaintiffs, in the event of Station Casinos' bankruptcy. Defendants arbitrarily grant selected individuals and entities the ability to participate in the Exchange Offers while denying Plaintiff the ability to participate in the Exchange Offers, thereby causing Plaintiff's Notes to be subordinated to the New Notes.

52.     Given the state of the credit markets and economic environments, Station Casinos will almost likely enter into bankruptcy or become terminally insolvent in the next year, and there is a substantial likelihood that Plaintiff's bonds will cede to the purported priority of the New Notes and not be redeemed at the end of Station Casinos' liquidation process.

### CLASS ACTION ALLEGATIONS

53.     Plaintiff bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and all others similarly situated as members of the following class:

> All persons or entities which are ineligible to participate in the Exchange Offers and which hold or held the following Station Casinos bonds at any time since February 3, 2009: a) 6 % Senior Notes due 2012, CUSIP No. 857689AV5; b) 7 ¾% Senior Notes due 2016, CUSIP No. 857689BA0; c) 6 ½% Senior Subordinated Notes due 2014, CUSIP No. 857689AR4; d) 6 ⅞ % Senior Notes Due 2016, CUSIP No. 857689AT0; and e) 6 ⅝ % Senior Subordinated Notes due 2018, CUSIP No. 857689AZ6.

54.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their

officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

55.   ***Numerosity***.  The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains many thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

56.   ***Existence and Predominance of Common Questions of Law or Fact***.  Common questions of law or fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal or factual questions include, but are not limited to, the following:

(a)   Whether Defendants' Exchange Offers violate identical provisions in the respective indenture agreements for the Old Notes held by Plaintiff and the other members of the Class.

(b)   Whether Defendants' Exchange Offers violate the "All Shares/Best Price" rule pursuant to 15 U.S.C. §78n(d)(7);

(c)   Whether Defendants' Exchange Offers violate the Trust Indenture Act of 1939, 15 U.S.C. §§77aaa, *et seq.*;

(d)   Whether Defendants' Exchange Offers are unfair, discriminatory and arbitrary;

(e)   Whether the Exchange Offers should be rescinded; and

(f)      Whether Plaintiff and the Class are entitled to equitable relief and/or other relief, including, but not limited to, specific performance of the previously-issued indentures, and the amount and nature of such relief.

57.     *Typicality*.  Plaintiff's claims are typical of the claims of the members of the Class in that Plaintiff is unlawfully, unfairly, and involuntarily excluded from participating in the Exchange Offers either as a qualified institutional buyer or as a non-U.S. investors located outside the United States, as are the other members of the Class.

58.     ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action securities litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

59.     *Superiority.*  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

60.     In addition, the Class may be also certified because:

(a)     the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

61.     The claims asserted herein are applicable to all persons or entities throughout the United States which hold or held the bonds listed in paragraph 53 above at any time from February 3, 2009 to the present and have been or will be deemed ineligible and thereby precluded from participating in Defendants' Exchange Offers.

62.     Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

63.     Damages may be provided to each member of the Class on a class-wide basis based on the Indenture information maintained in Defendants' records, the records of members of the Class, and in Internet databases like www.cusip.com, and so that the cost of administering damages for the Class can be minimized. However, the precise type and amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

## COUNT I

### Breach of Indenture

64.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

65.     All the Indentures for the bonds listed in paragraph 53 above, including the 6 ⅞ % Senior Notes Due 2016 and the 7 ¾ % Senior Notes Due 2016, are identical for the purposes of this Count.  Plaintiff purchased his 6 ⅞ % Senior Notes Due 2016 and the 7 ¾ % Senior Notes Due 2016 pursuant to the respective Indentures.

66.     Each of the Indentures provides that Station Casinos shall not issue, assume or guarantee any debt secured by the respective notes without effectively providing that the notes shall be secured equally and ratably with such debt and/or that Station Casinos shall not incur any Indebtedness that is subordinate or junior in right of payment to Senior Indebtedness and senior in any respect in right of payment to the Notes.  The Exchange Offers violate that provision of the Indentures because the New Notes are not secured equally and ratably with the Old Notes, and because the New Notes subordinate the Old Notes.

67.     Each of the Indentures provides that Station Casinos triggers default when Station Casinos generally is not paying its debts as the same become due or commences a voluntary case under bankruptcy law.  The Exchange Offers trigger a default under the "Events of Default" provision of the indenture agreements because the New Notes subordinate the Old Notes and there is a substantial likelihood that Station Casinos will not be able to pay the Old Notes when they become due , and because Station Casinos anticipates commencing a voluntary case under bankruptcy law in connection with the Exchange Offers.

68.     Each of the Indentures provides that Station Casinos cannot reduce the rate of or extend the time for payment of interest on the respective notes or reduce the principal or change the stated maturity of the respective notes, without the consent of affected noteholders. The Exchange Offers violate that provision of the Indentures because the Old Notes are subordinated to the New Notes, there is a substantial likelihood that Station Casinos will not be able to pay the Old Notes when they become due, and because Station Casinos did not obtain the consent of Plaintiff or other affected noteholders to the Exchange Offers.

69.     As a result of Defendants' breach, Plaintiffs have and will continue to suffer damages and will continue to be damaged in the future.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

70.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

71.     All the Indentures for the bonds listed in paragraph 53 above, including the 6 ⅞ % Senior Notes Due 2016 and the 7 ¾ % Senior Notes Due 2016, are identical for the purposes of this Count. Plaintiff purchased his 6 ⅞ % Senior Notes Due 2016 and the 7 ¾ % Senior Notes Due 2016 pursuant to the respective Indentures.

72.     Each of the Indentures imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

73.     In addition to what is alleged above, Defendants did not engage in good faith and fair dealing in the performance and enforcement of the Indentures by, in the face of certain bankruptcy, debt default and other events of insolvency, attempting to unilaterally and arbitrarily cherry-pick

among its bond holders and only honor Station Casinos' debt obligation to a limited number of those bond holders by subordinating the Old Notes in favor of the New Notes.

74.     Plaintiff and the members of the Class have and will continue to suffer damages as a direct and proximate result of Defendants' breach of their duty of good faith and fair dealing with respect to the Indentures.

## COUNT III

### "All Shares/Best Price" Rule - 15 U.S.C. §78n(d)(7)

75.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

76.     15 U.S.C. § 78n(d)(7) prohibits unfair, arbitrary and discriminatory tender offers for similarly-situated securities holders.

77.     The Exchange Offers are tender offers for Station Casinos' bond securities.

78.     Plaintiff is a similarly-situated securities holder to the QIBs and certain non-U.S. investors located outside the United States who participated and will participate in the Exchange Offers.

79.     Defendants unfairly, arbitrarily, and discriminatorily prohibit Plaintiff from tendering or accepting the terms of the Exchange Offers.

80.     Defendants unfairly, arbitrarily, and discriminatorily prohibit Plaintiff from tendering or accepting the terms of the Exchange Offers in violation of 15 U.S.C. §78n(d)(7).

81.     As a result of the foregoing, Plaintiff has suffered damages and will continue to be damaged in the future.

## COUNT IV

### The Trust Indenture Act of 1939 - 15 U.S.C. §§77aaa, *et seq.*

82.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

83.     The Trust Indenture Act of 1939 requires bond holder consent where a bond holder's rights are impaired, 15 U.S.C. §77ppp, that a bond indenture be honored, §77ooo(a), and that, on default, that a bond trustee act as "a prudent man." §77ooo(c).

84.     The Exchange Offers impair the rights of Plaintiff and other Class members because their Old Notes have been subordinated by the New Notes and because there is a substantial likelihood that Plaintiff and the Class' Old Notes will cede to the purported priority of the New Notes and not be redeemed at the end of Station Casinos' liquidation process.

85.     Defendants did not have Plaintiff's consent to undertake the Exchange Offers or otherwise impair Plaintiff and the Class' rights under the Indentures governing the Old Notes.

86.     Defendants violated the Indentures for the Old Notes held by Plaintiff and other Class members by undertaking the Exchange Offers, in that Defendants improperly encumber Plaintiff's and the Class' Old Notes, trigger default under the Indentures, and materially alter the rate and time for payment of interest on the Old Notes and/or reduce the stated maturity of the Old Notes, since the Exchange Offers subordinate Plaintiff's and the Class' Old Notes to the New Notes and there is a substantial likelihood that Plaintiff's and the Class' Old Notes will cede to the purported priority of the New Notes and not be redeemed at the end of Station Casinos' liquidation process.

87.     Defendants thereby violated the Trust Indenture Act of 1939.

88.     As a result, Plaintiff has suffered damages and will continue to be damaged in the future.

## COUNT V

### Equitable Subordination

89.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

90.     There is a substantial likelihood that Station Casinos will go into bankruptcy, a debt default and other insolvency event in the near future.

91.     The Exchange Offers unfairly, arbitrarily, and discriminatorily give Defendants the unilateral right to determine which individuals and entities are QIBs and certain non-U.S. investors located outside the United States which are eligible to participate in the Exchange Offers.

92.     Defendants unfairly, arbitrarily and discriminatorily exercise that right against Plaintiff and other similarly-situated bond holders since there is no lawful reason for discriminating between individuals and entities who might have been QIBs and certain non-U.S. investors located outside the United States which are eligible to participate in the Exchange Offers, and which are not.

93.     The Exchange Offers unfairly, arbitrarily, and discriminatorily favor the individuals and entities who Defendants unilaterally determined are QIBs and certain non-U.S. investors located outside the United States eligible to participate in the Exchange Offers, to the detriment of similarly-situated bond holders, since the Exchange Offers grant New Notes that subordinate the Old Notes, and since there is a substantial likelihood that the Old Notes will cede to the purported priority of the New Notes and not be redeemed at the end of Station Casinos' liquidation process.

94.     Because the Exchange Offers unfairly, arbitrarily, and discriminatorily favor the individuals and entities who Defendants unilaterally determine are QIBs and certain non-U.S. investors located outside the United States which are eligible to participate in the Exchange Offers,

the Exchange Offers violate equity, fairness, rationality, and the essential principles of free market capitalism.

95.     As a result, Plaintiff has suffered damages and will continue to be damaged in the future.

**COUNT VI**

**Liability of Board and Officer Defendants**

96.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

97.     The Board and Officer Defendants participated in and directed the creation, ratification, execution, negotiation, and undertaking of the Exchange Offers.

98.     The Exchange Offers have caused harm to Plaintiff and the Class because the Exchange Offers breach the Indentures, the implied covenant of good faith and fair dealing with respect to the Indentures, violate the All Shares/Best Price rule, 15 U.S.C. §78n(d)(7), The Trust Indenture Act of 1939, 15 U.S.C. §§77aaa, *et seq.*, and violate principles of equity and fairness.

99.     The Board and Officer Defendants are liable for that harm to Plaintiff and the Class.

100.     As a result of that harm caused by the Board and Officer Defendants, Plaintiff has suffered damages and will continue to suffer damages in the future.

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief and judgment against Defendants as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and his legal counsel to represent the Class;

B.     Awarding Plaintiff and the Class declaratory relief that the Exchange Offers violate: the Indentures; the implied covenant of good faith and fair dealing with respect to the Indentures; 15 U.S.C. §78n(d)(7); 15 U.S.C. §§77aaa, *et seq*.; and/or equity;

C.     Enjoining final consummation of and otherwise rescinding the Exchange Offers;

D.     For reasonable attorneys' fees and costs to counsel for the Class if and when non-pecuniary benefits are obtained on behalf of the Class; and

E.     Granting such other and further relief as is just and proper.

## DEMAND FOR TRIAL BY JURY

101.   Plaintiff, on behalf of himself and all others similarly situated, hereby demands a jury trial on all issues so triable.

DATED: February 12, 2009

ALBRIGHT, STODDARD, WARNICK & ALBRIGHT

_____

G. Mark Albright, Esq.

Martin A. Muckleroy, Esq.
801 south Rancho Drive
Las Vegas, NV 89106-3854
Telephone: 702/384-7111
702/384-0605 (fax)

- 21 -

COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP
PAUL J. GELLER
JONATHAN M. STEIN
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 E. Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

CAULEY LAW FIRM, PLLC
S. GENE CAULEY
RICHARD E. WALDEN
8201 Cantrell Rd., Suite 315
Little Rock, AR 72221
Telephone: 501/748-4835

Attorneys for Plaintiff